UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>LINDA LAIRD, and )<br>JAMES BLIZZARD )<br>)<br>Defendants. )<br>) | Case No. 24-cr-174 (RDM) |

### UNITED STATES' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO SEVER AND STRIKE SURPLUSAGE OF COUNT TWO OF THE INDICTMENT

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully submits the following Omnibus Opposition to Defendants' Motions to Sever and Strike Surplusage of Count Two of the Indictment. *See* ECF No. 45 and 46. Defendant Laird's Motion to Sever, on its face, fails to establish the requirement that Defendant James Blizzard is likely to testify. The Defendants' joint motion to strike the government's charge of conspiracy to commit mail fraud is also legally flawed, as contrary to the defense's argument, the government is not required to prove an overt act or identify a specific mailing in its Indictment to state an offense under 18 U.S.C. § 1349. Accordingly, the Defendants' Motions should be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

As set forth in the Indictment, from November 2017 through at least September 2020, Defendants Linda Laird and James Blizzard conspired with each other and engaged in a scheme to fraudulently obtain status as victim C.R.'s co-guardians and co-conservators, in order to gain access to her bank account and public assistance benefits and use this access for their own personal gain. At the time, C.R. was over 80 years old and suffered from severe cognitive impairments that rendered her incapacitated. Indictment at ¶ 1. The Defendants became C.R.'s co-guardians, co-conservators, and the representative payee of C.R.'s Social Security benefits by filing petitions

and applications with the D.C. Superior Court and Social Security Administration, by misrepresenting their intentions to provide care, shelter, clothing, and personal items for C.R., and by falsely promising to fulfill their legal duties as guardians, conservators, and representative payee. *Id* at ¶¶ 9, 11-13, 15, 19, 24, 26. This conspiracy and scheme was carried out so that the Defendants could unjustly enrich themselves with money that was only to be used for the benefit of C.R. *Id* at ¶ 7.

On April 9, 2024, the grand jury returned a five-count indictment against the Defendants. Count 1 charged both Defendants with conspiracy to commit Social Security conversion and theft of public money, in violation of 18 U.S.C. § 371; 42 U.S. Code § 408(a)(5) and 18 U.S. Code § 641. Indictment at ¶ 42. Count 2 charged both Defendants with conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. § 1349. Indictment at ¶ 44. Count 3 charged the Defendants with Mail Fraud, in violation of 18 U.S.C. § 1341. Indictment at ¶ 46. Count 4 charged the Defendants with financial exploitation of a vulnerable adult or elderly person, in violation of 22 D.C. Code §§ 933.01(a)(3), 936.01(a)(1). Indictment at ¶ 48. Count 5 charged the Defendants with fraud in the first degree, in violation of 22 D.C. Code § 3221(a). Indictment at ¶ 50.

On July 11, 2025, the United States filed a Motion to Dismiss Count Three of the Indictment, charging the Defendants with mail fraud in violation of 18 U.S.C. § 1341. Upon the granting of that motion, the portion of the Defendants' Joint Motion to Dismiss Count of Indictment for Failure to State an Offense, whereby they seek to dismiss Count 3, will be moot.

## ARGUMENT

Defendant Linda Laird moves to sever the defendants for trial on the basis of expected favorable co-defendant testimony, and under the *condition* that the trial of co-defendant James Blizzard go first, so that Defendant Laird may call him as a witness at her trial. *See* ECF No.46 at ¶ 4. For this reason alone, but including the forgoing, Defendant Laird fails to make a prima facie

case for severance. Additionally, the Defendants jointly argue that the government fails to state an offense for conspiracy to commit mail fraud in Count 2 of the Indictment.[1] The Defendants argue that the Indictment "fails to allege a use or intended use of the mail sufficient to make out the use-of-the-mail element for mail fraud and thus to state the offense of conspiracy to commit mail fraud." *See* ECF No. 46 at 6. But the Defendants conflate the requirements of mail fraud under 18 U.S.C. § 1341 with those of a conspiracy to commit mail fraud charge under 18 U.S.C. § 1349. The Defendants' basis for striking this portion of Count 2 is legally incorrect because the government is not required to allege a specific mailing for this type of § 1349 charge, just an unlawful agreement where the use of mails was foreseeable by the Defendants. The Indictment supplies the necessary allegations to state such an offense.

## I.    DEFENDANT LAIRD'S MOTION TO SEVER SHOULD BE DENIED

### A. Applicable Legal Principles

"There is a preference in the federal system for joint trials." *United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019), because they "play a vital role in the criminal justice system, promoting efficiency and avoiding the scandal and inequity of inconsistent verdicts." *See United States v. Straker*, 800 F.3d 570, 626 (D.C. Cir. 2015) (cleaned up); *see also United States v. Sutton*, 2022 WL 11744415, at *3 (D.D.C. Oct. 20, 2022) (citing relevant cases). Such concerns are "'especially strong' when the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve . . . defendants who are charged, inter alia, with participating in the same illegal acts." *See United States v. Tucker*, 12 F. 4th 804, 824 (D.C. Cir. 2021) (cleaned up).

Under Rule 14(a), a properly joined defendant may seek to sever their trial from that of

---

[1] Count 2 of the Indictment also alleges conspiracy to commit wire fraud, which the Defendants do not address in their motion.

their co-defendant only when there is a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "Rule 14 does not require severance even if prejudice is shown." *Id*. at 538-39. As the D.C. Circuit has repeatedly stated, even when the risk of prejudice is high, motions to sever should be granted "sparingly," and that less drastic measures, like limiting instructions, will normally "suffice to cure any risk of prejudice." *See Tucker*, 12 F.4th at 825 (citations omitted). Whether to grant severance is committed to "the sound discretion of the trial court." *United States v. Mejia*, 448 F.3d 436, 446 (D.C. Cir. 2006) (internal quotation marks omitted).

As Defendant Laird cites, when deciding whether to sever on the basis of an expected co-defendant's testimony, courts in the D.C. Circuit "first determine whether the moving co-defendant has established a prima facie case for severance, which requires showing: "(1) a bona fide need for the testimony; (2) the substance of the testimony; (3) the exculpatory nature and effect of the testimony; and (4) the likelihood that the co-defendant will testify if the cases are severed." *United States v. Williams*, 507 F. Supp. 3d 181, 194 (D.D.C. 2020), *aff'd sub nom*. *United States v. Douglas*, 72 F.4th 332 (D.C. Cir. 2023); *citing United States v. Kayode*, 254 F.3d 204, 210 (D.C. Cir. 2001) (quoting *United States v. Ford*, 870 F.2d 729, 731 (D.C. Cir. 1989)). "A failure to demonstrate any one of these elements is dispositive." *Williams*, 507 F. Supp. 3d at 194 (quoting *United States v. Washington*, 12 F.3d 1128, 1133 (D.C. Cir. 1994).

The *Williams* court went on to say:

> [C]ourts, including the D.C. Circuit, have consistently held that a movant fails to meet this burden if the offer is conditioned on a specific order in which the defendants will be tried. See, e.g., *Ford*, 870 F.2d at 731; *United States v. Blanco*, 844 F.2d 344, 353 (6th Cir. 1988). In *Ford*, the movant's co-defendant stated through counsel that he would testify in favor of the movant, but, as here, the offer was conditioned on the co-defendant being tried first. The D.C.

4

> Circuit found severance inappropriate, reasoning that Rule 14 should not be read 'as a mechanism for alleged co-conspirators to control the order in which they are tried.' *Ford*, 870 F.2d at 731 (quoting *Blanco*, 844 F.2d at 353).

*Id*. at 95. In denying the defendant's motion to sever, the *Williams* court reasoned, in part, that because the co-defendant's offer to testify was conditioned on his trial occurring first, "the conditional nature of this promise fails to establish a reasonable probability that [the co-defendant] will actually testify." *Id*.

### B. Defendant Laird Has Not Met the Burden to Justify Severance

As alleged in the Indictment, Defendants Linda Laird and James Blizzard conspired with each other and engaged in a scheme to fraudulently obtain status as victim C.R.'s co-guardians and co-conservators, in order to gain access to her bank account and public assistance benefits and use this access for their own personal gain. Indictment at ¶ 1. The Defendants accomplished this goal by jointly petitioning the D.C. Superior Court for guardianship and conservatorship, jointly appearing in court together for hearings, and jointly misrepresenting to the judge that they would take care of C.R. *Id* at ¶¶ 9, 15, 19, 24, 26. The Defendants here have engaged in the same illegal acts, which would require proof by the same evidence and the same witnesses at trial. Given the heavy joint involvement of the Defendants in this conspiracy, there is no question that the two co-conspirators are properly joined, and that a strong preference exists for a joint trial to promote judicial economy and avoid potential inconsistent rulings. *See Tucker*, 12 F.4th at 825.

Defendant Laird's basis for severance is to allow for exculpatory testimony from her co-defendant, which Defendant Laird, "[u]pon information and belief," thinks James Blizzard would be willing to provide. Mot. at ¶ 2. To make a prima facie case for severance under this basis, Defendant Laird must pass the test outlined in *Kaycode* and *Ford*, and most obviously, Defendant Laird does not establish the fourth prong: "the likelihood the codefendant will testify if the cases

are severed." *Kayode*, 254 F.3d at 210. Here, Defendant Laird argues, "it is *believed* that, at a hearing, Mr. Blizzard would in fact indicate that he would be willing to testify for [Ms. Laird] *if his trial were to precede hers.*" Mot. at 4. (emphasis added). The motion then requests that severance be granted and that the trial of James Blizzard be first. Not only is Defendant Laird uncertain that James Blizzard would testify, Defendant Laird clearly states that her co-defendant's potential testimony would also be conditioned on his trial occurring first. The D.C. Circuit, and "[t]he majority of other circuits have held either that such a conditional promise to testify is insufficient because defendants have no right to control the order in which a case will be tried, *United States v. Ford,* 870 F.2d 729, 731–32 (D.C.Cir.1989); *United States v. Parodi,* 703 F.2d 768, 779–80 (4th Cir.1983); *United States v. Blanco,* 844 F.2d 344, 352–53 (6th Cir.), *cert. denied,* 486 U.S. 1046, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988), or that a trial court does not abuse its discretion when it denies severance on the ground that the willingness to testify is conditional, *United States v. Mariscal,* 939 F.2d 884, 886 (9th Cir.1991); *United States v. Espinosa,* 771 F.2d 1382, 1409 (10th Cir.), *cert. denied,* 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985)." *United States v. McNeal*, 853 F. Supp. 1047, 1050 (N.D. Ill. 1994). The tack employed by Defendant Laird here has been strongly disapproved by this Court and others, and has consistently served as the reason why defendants fail to establish the "likelihood that the co-defendant will testify" element in *Kaycode* and *Ford*. Defendant Laird fails to meet her burden on this element due to the conditional nature of Defendant Blizzard's testimony, and such failure is dispositive. *Williams*, 507 F. Supp. 3d at 194 (quoting *United States v. Washington*, 12 F.3d 1128, 1133 (D.C. Cir. 1994). For these reasons, the Court should deny Defendant Laird's request for severance.

    II.    **THE COURT SHOULD DENY DEFENDANTS' JOINT MOTION TO STRIKE CONSPIRACY TO COMMIT MAIL FRAUD IN COUNT 2 BECAUSE IT PROPERLY STATES AN OFFENSE**

  A. **Applicable Legal Principles**

"Before trial, a defendant may move to dismiss an indictment (or specific counts) on the basis that it fails to state an offense—i.e., that 'the indictment does not charge a crime against the United States.'" *United States v. Akinyoyenu*, 201 F. Supp. 3d 82, 84–85 (D.D.C. 2016) (quoting *United States v. Cotton*, 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (citations omitted); *Al Bahlul v. United States*, 767 F.3d 1, 10 n. 6 (D.C.Cir.2014) ("Failure to state an offense is simply another way of saying there is a defect in the indictment.")

An "'indictment's main purpose is to inform the defendant of the nature of the accusation,'" and it "need only contain 'a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015) (quoting Fed. R. Crim. P. 7(c)(1)). An indictment "is sufficiently specific where it (1) contains the elements of the offense charged and fairly informs the defendant of those charges so that he may defend against them, and (2) enables him to plead acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Safavian*, 429 F. Supp. 2d 156, 158 (D.D.C. 2006) (citations omitted); see also *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) ("[T]o be sufficient, an indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense."). *See United States v. Rayful Edmond*, 924 F.2d 261, 269 (D.C. Cir. 1991) ("Despite the all too common use of 'speaking' indictments, the function of a federal indictment is to state concisely the essential facts constituting the offense, not how the government plans to go about proving them.").

A conspiracy to commit mail fraud occurs when a person knowingly and willfully conspires or agrees "with someone to do something that, if actually carried out, would result in the crime of mail fraud." *Pattern Crim. Jury Instr.* 11th Cir. OI O54 (2024). To prove conspiracy to commit mail fraud under 18 U.S.C. § 1349, the government need only prove that "(1) [two or more

7

persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit a fraud crime listed in Title 18 Chapter 63, as charged in the indictment [and] (2) the defendant knew the unlawful purpose of the plan and willfully joined in it." *Id*. Just as in any conspiracy, it is sufficient that the defendant knowingly joined the conspiracy in which wire fraud or mail fraud was a foreseeable act in furtherance of the conspiracy. *United States v. Leahy*, 82 F.3d 624 (5th Cir. 1996) (*citing United States v. Basey*, 816 F.2d 980, 997 (5th Cir. 1987) (holding that once a defendant's knowing participation in a conspiracy has been established, "the defendant is deemed guilty of substantive acts committed in furtherance of the conspiracy by any of his criminal partners"). Since § 1349 does not specify an overt act, and noting *Whitfield v. United States*, 543 U.S. 209, 214 (2005) (overt act not required to prove money laundering), courts have held that § 1349 does not require proof of an overt act. *See United States v. Roy*, 783 F.3d 418, 420 (2d Cir. 2015) (collecting cases).

**B. Count 2 Properly States an Offense for Conspiracy to Commit Mail Fraud**

Count 2 of Indictment alleges that from November 2017 through at least September 2020, the Defendants:

> [D]id knowingly and willfully conspire, confederate, and agree, with each other and with other persons, to commit (a) mail fraud by devising, intending to devise, and engaging in a scheme to defraud and to obtain money and property from C.R. by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, placing in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or depositing or causing to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or taking or receiving therefrom, any such matter or thing, or knowingly causing to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing . . . (In violation of Title 18, United States Code, Section 1349)

Indictment at ¶ 44. The allegations in the above charge and the preceding paragraphs of the Indictment that are incorporated by reference are all that is required to inform the Defendants of the precise offense of which they are accused. The Indictment details the purpose of the conspiracy and scheme and its manner and means, which included obtaining from the Superior Court the status of co-guardians and co-conservators of C.R. and then using that status to gain access and control over C.R.'s funds. Although the government does not need to allege overt acts for a § 1349 conspiracy, it does here. Indictment at ¶ 8. As illustrated from the caselaw and jury instructions above, the government also does not need to identify a specific mailing that furthered the Defendants' scheme to state a § 1349 charge, as the Defendants have incorrectly argued. This would only be the case for a substantive mail fraud charge under 18 U.S.C. 1341. The crux of the Defendants' conspiracy to commit mail fraud, which is laid out in the Indictment, is the *unlawful agreement* where mail fraud was a foreseeable act. When the Defendants devised their scheme to petition the Superior Court into becoming co-guardians and co-conservators of C.R., they clearly foresaw that the use of the mails would follow, and did themselves send mailings that furthered their conspiracy. For example, paragraph 24 of the Indictment states that on April 18, 2018, the Defendants "filed a petition with the Superior Court that requested conservatorship over C.R." This petition was filed and sent to C.R. through the mail in order to give C.R. required notice. The Defendants' scheme clearly depended, in part, on this petition being filed and mailed, because it was required to get the conservatorship they needed to access the victim's funds and unlawfully use them for their own benefit. There are dozens of other mailings referenced in the Indictment and contained within the evidence that the Defendants sent, or caused to be sent, in furtherance of their conspiracy. But as the government has pointed out, alleging overt acts and specifying each of these mailings is simply not required to state an offense of conspiracy to commit mail fraud under § 1349—the unlawful agreement is what must be specified, and the Indictment sufficiently

identifies the purpose, manner, and means of the conspiracy and scheme, and the fact that the mails were used in its execution. Accordingly, the Defendant's joint motion to strike this count should be denied.

## CONCLUSION

For the reasons set forth above, the Defendant's Motions should be denied.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/   Jason Facci*
Jason Facci (D.C. Bar No. 1027158)
Special Assistant United States Attorney
Fraud, Public Corruption, & Civil Rights
601 D Street, NW
Washington, D.C.  20530
Tel: 202.252.7742 / Jason.Facci@usdoj.gov